UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

WENDELL K. SPURLOCK

CRIMINAL ACTION

NO. 10-152-BAJ-DLD

**RULING ON MOTION TO SUPPRESS AND
MOTION TO OFFER OTHER ACTS EVIDENCE**

I. BACKGROUD

The defendant, Wendell K. Spurlock ("Spurlock"), was indicted on November 18, 2010 for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The matter is presently before the Court on a "Motion to Offer 'Other Acts' Evidence" (doc. 21) by the Government, and a Motion to Suppress (doc. 22) by the defendant.[1] The Court conducted an evidentiary hearing on the motions on January 24, 2011. Both parties have filed post-hearing briefs (docs. 32 and 33) as ordered by the Court. After careful consideration of the briefs and the testimony presented at the evidentiary hearing, the Court determines that the government's motion to offer other acts evidence should be granted, and the defendant's motion to suppress should be denied.

---

[1] The defendant has filed an opposition to the Government's motion (doc. 22).

## II. FACTS

On July 8, 2010, Spurlock was allegedly seen handling a Cobra .380 semiautomatic pistol in the parking lot of a convenience store during a verbal altercation with a female acquaintance. The woman contacted police immediately following the incident. Responding to the complaint, Officer Ken Camallo of the Baton Rouge Police Department ("BRPD") located and stopped the defendant's vehicle on a public roadway. After stopping the vehicle, Officer Camallo instructed Spurlock to exit the vehicle with his hands on his head and to get on his knees. Spurlock exited the vehicle and was placed into handcuffs. Officer Camallo asked the defendant whether he was armed and whether there were any weapons in the vehicle. Spurlock initially responded that there were no weapons present. Two other BRPD officers, Corporal Averett and Officer Passman, arrived on the scene. Spurlock, after being placed into handcuffs, made a statement to Averett that there was in fact a firearm in the vehicle. Officers subsequently retrieved the firearm from the defendant's vehicle. Officer Camallo ran a background check and determined that Spurlock was a convicted felon. Spurlock was then taken into custody, advised of his rights, and was informed that he was being arrested for aggravated assault and possession of a firearm by a convicted felon. The defendant related to the officers that he was interested in cooperating with the police in relation to the investigation of

2

narcotics in the area, and accordingly, Officer Camallo contacted BRPD narcotics detective Jason Dohm.

Later on the same date, Spurlock was transferred from the District 4 police precinct to the narcotics office. Detective Dohm met with Spurlock and advised him of his *Miranda* rights. Dohm testified that Spurlock indicated that he understood those rights. Detective Dohm also questioned Spurlock as to how he came to be in police custody. After speaking with Spurlock, Detective Dohm was satisfied that the defendant would be able assist with the investigation of narcotics trafficking. Spurlock was released on July 8 after agreeing to cooperate with law enforcement officials and providing Detective Dohm with his telephone number. Dohm instructed Spurlock to call and check in with the police, and told Spurlock that he would call him if he did not hear from Spurlock. Detective Dohm testified that he spoke to Spurlock by telephone on several occasions during the intervening weeks.

On July 22, 2010, Spurlock drove to the BRPD narcotics office to meet with Special Agent Augustine Lugo, Jr. of the Bureau of Alcohol, Tobacco, Firearms and Explosives and Detective Kevin Hines of the BRPD. Upon his arrival, Spurlock was placed in an interview room to wait for Lugo and Hines. Detective Dohm testified that he did not question Spurlock during this time. Once Lugo and Hines arrived, Spurlock was brought to a kitchen area in a non-public setting. Spurlock was not given *Miranda* warnings during the July 22 questioning. The defendant then made statements regarding the firearm that was

in his vehicle during the incident on July 8. At the conclusion of the interview, Spurlock was released.

### III. LAW AND ANALYSIS

#### A. Motion to Suppress

The defendant moves the Court to suppress the statements made to Special Agent Lugo on July 22, 2010.[2] The defendant argues that the use of these statements constitutes a violation of his Fifth Amendment rights, because the statements were made during a custodial interrogation conducted by law enforcement agents without the defendant having been advised of his *Miranda* rights. In opposition, the Government submits that Spurlock was not in custody and therefore, *Miranda* warnings are inapplicable.

The Fifth Amendment privilege against self-incrimination prohibits the admission of statements given by a suspect during a custodial interrogation without prior warning. *U.S. v. Gonzales*, 121 F.3d 928, 939 (5th Cir. 1997). Thus, statements obtained during a custodial interrogation without the benefit of adequate warnings under *Miranda* are generally deemed inadmissible. *U.S. v. Stevens*, 487 F.3d 232, 241 (5th Cir. 2007). However, in the absence of a custodial interrogation, a defendant's Fifth Amendment right against self-incrimination is not implicated. *Murray v. Earle*, 405 F.3d 278, 286 (5th Cir. 2005). In *U.S. v. Bengivena*, 845 F.2d 593 (5th Cir. 1988), the United States Court of Appeals for the Fifth Circuit articulated the appropriate standard to be

---

[2] During the hearing, defense counsel stated that the motion to suppress was not directed towards the statement which the defendant made to Officer Camallo on July 8, 2010.

used in determining whether a defendant was subjected to a custodial interrogation:

> The Miranda Court first defined 'custodial interrogation' to mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. The meaning of custody has been refined so that the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. The Supreme Court has also explained that the only relevant inquiry is how a reasonable man in the suspect's position would have understood the situation. A suspect is therefore in custody for purposes of Miranda when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest. The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation–that is neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances

*Bengivena*, at 596. The Fifth Circuit has further stated that "[t]he subjective intent of neither the officer nor the defendant is relevant to the custody determination." *U.S. v. Chavira*, 614 F.3d 127, 133 (5th Cir. 2010).

It is not alleged that Spurlock was under formal arrest during the time of the July 22 questioning. The defendant maintains, however, that the meeting was involuntary in several respects. First, the defendant points to the testimony of Special Agent Lugo and Detective Dohm, each of whom indicated having no recollection of Spurlock being advised that he was free to terminate the

5

questioning or to leave at will. Secondly, Spurlock argues that it was certain that he would have been arrested had he not arrived at the meeting with the law enforcement agents. Special Agent Lugo testified that had Spurlock failed to appear, it is likely that he would have been later arrested. The defendant also points to the duration of the questioning, which he alleges lasted approximately two hours, and the fact that the questioning occurred within the police station.

Despite the factors noted by the defendant, the Court finds that Spurlock's appearance at the police station on July 22 was voluntary. The totality of the circumstances does not indicate that there was a restraint on the defendant's freedom to the degree associated with a formal arrest. Prior to submitting to the questioning, the defendant was fully apprised of the nature of the July 22 meeting through his several conversations with Detective Dohm. Although the defendant may have felt compelled to appear to avoid arrest for the July 8 incident, as Detective Dohm testified, Spurlock could have simply elected to terminate contact with law enforcement and refused further cooperation. Moreover, while Dohm and Lugo did not testify that Spurlock was told that he was free to leave, there is also no indication that the defendant was told that he was not at liberty leave or to terminate the questioning. To the contrary, Detective Dohm testified that after arriving, Spurlock walked outside to relocate his vehicle and was involved in a minor accident in the parking lot. Dohm testified that Spurlock was outside of the station for a period of 30 to 45 minutes following the accident before returning.

Further, the testimony presented indicates that the defendant was not physically restrained during the questioning. Both Detective Dohm and Special Agent Lugo testified that Spurlock was not placed into handcuffs at any time. Detective Dohm testified that the questioning took place within a kitchen area rather than an interrogation room, and that Spurlock was not threatened nor was any force used against him.[3] At the conclusion of the meeting with the law enforcement agents, Spurlock was released with the understanding that he would continue to cooperate, and left the police station in his own vehicle. Accordingly, based upon the evidence and argument presented, the Court determines that the defendant was not subjected to a custodial interrogation on July 22, 2010, and therefore, the absence of *Miranda* warnings does not preclude the admission of the defendant's statements made on that date.

### B. Introduction of 'Other Acts' Evidence

The Government has filed a motion seeking to introduce evidence of other instances where the defendant allegedly possessed the firearm in question. At the evidentiary hearing, the Court ruled that the "other acts" evidence which the government seeks to admit is relevant to the facts of the present case. However, the defense argued at the hearing that the "other acts" evidence is only relevant if the government seeks to prove the theory that the defendant was in constructive possession of the firearm, but is not relevant to a theory of actual possession.

---

[3] Detective Dohm stated that the meeting occurred in the kitchen area so that Spurlock would not been seen by arrestees or other confidential informants who may have been present in the police station during that time.

The defense further argued that the Government should be required to select the theory that it intends to prove, either constructive possession or actual possession.[4] The Court instructed the parties to brief this issue following the hearing.

The Court holds that the Government is not required to select a single theory of possession, and may present evidence of actual possession, constructive possession or both at trial. The Fifth Circuit has ruled that an instruction advising a jury to consider a theory of constructive possession in a firearms case is not improper if the evidence supports it, even if the Government seeks to prove the defendant actually possessed the firearm. See, *U.S. v. Loudd*, 2009 WL 122561 (5th Cir. 2009). Accordingly, in the present case, the jury could be properly instructed on both constructive and actual possession, regardless of the theory argued by the Government, if it is supported by the evidence. Having previously ruled that the other acts evidence is relevant to facts of the present case, the Court holds that this evidence may be presented at trial.

---

[4] As noted by the Government, the indictment charges only that the defendant was in possession of a firearm, without reference to constructive or actual possession. See, Indictment (doc. 1).

## IV. ORDER

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED** that the defendant's motion to suppress (doc. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Offer 'Other Acts' Evidence (doc. 21) is **GRANTED**.

Baton Rouge, Louisiana, March 5, 2012.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA